JOHN H. BELCHER v. MULHALL & SCALING.

(Case No. 4463.)

1. CONTEMPORANEOUS PAROL AGREEMENT VARYING TERMS OF WRITTEN CONTRACT — VARIANCE.— There was a written agreement between two parties that one would buy a specified number of beeves from the other, for an amount to be paid for each beef delivered. The number was delivered, with the exception of a few retained at the request of the purchaser. The latter sued for damages for breach of contract, setting up a contemporaneous parol agreement, that the price paid for the cattle was so much for them, and so much in consideration that the vendor would use his influence to procure business for the vendee, and send him cattle in the future. The terms of the written contract were plain and unambiguous, and there was no allegation of fraud or mistake. *Held,*

(1) Such contemporaneous parol agreement varied the terms of the written instrument, and should have been excluded by the court.

(2) Evidence showing damage sustained by plaintiff, because of his failure to make a profit on the cattle, etc., was clearly inadmissible as irrelevant.

2. See opinion for oral testimony which, had it been admitted, would have formed a contract different from that set up in the petition, and entitled defendant to a new trial, on the ground of variance.

APPEAL from Cooke. Tried below before the Hon. H. E. Eldridge, special judge.

*Hare & Head*, for appellant.

*C. L. Potter*, for appellees.

I. It is only proof of some portion of the written contract, or some matter that alters, varies or changes the same by parol, that is not sanctioned by law; and it is correct to prove by parol a contract a portion of which only had been reduced to writing. Thomas *v.* Hammond, 47 Tex., 52; authorities cited and discussed in opinion; Cox *v.* Bray, 28 Tex., 259; 1 Greenl., sec. 284*a*.

II. If a verbal contract is made and a portion only of the same reduced to writing, the portion not placed in the writing is as susceptible of proof by parol as if none of the contract had been reduced to writing; and it is not necessary to allege fraud or mistake to authorize such proof. Thomas *v.* Hammond, 47 Tex., 52; Abbott's Trial Evidence, p. 294; division 8, subdiv. 6.

III. The consideration as expressed in a written contract may be the consideration of other agreement than the one stated in the writing, or the consideration stated may be shown to be false or to be entirely different than as stated by parol. Newsom *v.* Davis, 20 Tex., 419; Gibson *v.* Fifer, 21 Tex., 260; Howard *v.* Davis, 6 Tex., 174; Miller *v.* Fitchthorn, 31 Penn. St., 260.

IV. It is not error for the court to admit testimony that tends to prove a material allegation in the pleadings, although the proof may show an additional wrong not complained of in the pleadings.

STAYTON, ASSOCIATE JUSTICE.— Mulhall & Scaling, who were dealers in cattle doing business in St. Louis, Mo., brought this action to recover damages from Belcher for an alleged breach of contract.

They in substance alleged that on the 15th of June, 1880, they purchased from the appellant one thousand five hundred and twenty-eight head of beeves, paying him therefor $20 per head, and that in the same trade they purchased the "trade and influence" of the appellant, for which they paid him the additional sum of $2.75 upon each animal so bought from him, which in the aggregate amounted to $4,202.

It was alleged that Belcher violated the agreement by shipping cattle to Hunter, Evans & Co., which was a firm doing an opposition business in St. Louis, similar to that done by Mulhall & Scaling; and that Belcher also used his influence to induce other persons to ship cattle to Hunter, Evans & Co., in violation of the contract between them.

Belcher denied that he ever made such a contract as was alleged by the appellees.

On the trial it appeared that there was a written contract between the parties, and upon Mulhall & Scaling's attempting to prove what the contract was by the parol testimony of a witness, the written contract being produced in court, Belcher objected to the introduction of such testimony, and his objection was overruled and such testimony admitted, to which exception was taken. The ruling of the court in this matter is assigned as error.

The contract between the parties was made upon the part of Mulhall & Scaling by their agent, J. P. Addington, and was as follows: "Received of J. P. Addington twenty-five hundred dollars on my entire lot of beef cattle, about 1,250 head, of the following brands (here the brands are set out), at the rate of $22.75 per head, to be paid for at time of delivery, the $2,500 to stand as last payment on said cattle; said cattle to be delivered at Whitesboro and Gainesville as called for, or as near as I can conveniently do so, provided that he take them by the 15th of August.

"JOHN H. BELCHER."

This contract was signed in duplicate, one being retained by Belcher and the other delivered to Addington.

There is no averment in the pleadings that by fraud or mistake anything was omitted or left out of the written contract, but it is claimed that the written contract does not contain that part of the contemporaneous parol agreement by which Belcher agreed to ship cattle to Mulhall & Scaling to be sold on commission during the year 1880, and also to use his influence among other shippers to induce them so to do, and that the same may be proved by parol testimony.

The rule is well settled that a contemporaneous parol agreement cannot be set up to vary the terms of a written contract. Self v. King, 28 Tex., 552; Hunt v. White, 24 Tex., 653.

In the contract under consideration there is no ambiguity which calls for parol testimony to enable the court to read it aright; but it is clear in its terms; upon its face it shows what was sold; what was to be paid per head for the cattle; how and when they were to be paid for, and when and where they were to be delivered. If in the trial of this cause under pleadings so alleging the contract to be, Mulhall & Scaling had proposed to prove by parol testimony that it was agreed between the parties at the time the written contract was made, or before that time, that for the sum which the beeves sold by Belcher would amount to at the rate of $22.75, the appellant agreed, in addition to the beeves, to sell and deliver to the appellees, upon that consideration, a given number of cows, no one

would question that such evidence would be inadmissible; for it would vary the contract by adding something thereto not embraced in its terms.

If Belcher had delivered the beeves as he bound himself to do, and there had been a failure to pay for them upon delivery, and suit had been brought upon the written contract to recover the price agreed to be paid for them, and the appellees had sought to prove such a contemporaneous parol agreement as they sought to prove in this cause, there can be no question that such evidence would not have been admissible, in the absence of some pleading setting up that, by fraud, or mistake in the execution of the writing, something was left out of the writing which the parties intended should be embraced therein; for by the terms of the writing the appellees were to pay $22.75 for each beef delivered to them, and not for that and something else.

The written contract being a complete and perfect paper, the same is presumed to contain the whole agreement of the parties. Bishop on Contracts, 58.

The rule is thus stated by Smith, Justice, in the case of Self v. King, 28 Tex., 553: "When parties have reduced their contract to writing, which expresses the terms and character of it without uncertainty as to the subject or nature of the agreement, it is presumed that the writing is the repository, and contains the whole of the agreement made between them; and hence the rule that no contemporaneous evidence is admissible to contradict or vary the terms of a valid written agreement. 12 Wend., 573. The court may read a written document in the light of surrounding circumstances, which can be proved, in order to arrive at the true meaning and intention of the parties as expressed in the words used, but will not hear parol evidence of language or words other than those used by the parties themselves in the writing. No other words are to be added to or subtracted from the written instrument."

This is a wholesome rule, and to depart from it would introduce into the business of a people an uncertainty disastrous to the best interests of society, and remit parties for the determination of their rights to the treacherous memories of men, when they themselves have put their contracts in a form more enduring, and not subject to change so long as the instrument itself exists.

There is a class of cases in which it has been held that matters collateral to and yet distinct from the subject matter of a contract reduced to writing, may be shown by parol evidence; examples of such cases are found in the cases of Cox v. Bray, 28 Tex., 259, and

Thomas *v.* Hammond, 47 Tex., 54; but in such cases the evidence does not contradict or vary the written contract, but is consistent therewith.

The evidence introduced in this cause did tend to vary and contradict the written contract, and should have been excluded by the court. That all of the beeves which the appellant agreed to deliver to the appellees were delivered, except a few which, at the request of the appellees, he retained, is not questioned; but in order to prove the damage which the appellees claimed to have sustained, the court, over the objection of the appellant, permitted the appellees to prove that they not only failed to make a profit on the beeves which they had received from the appellant, but also to prove that they sold the same in a distant market for a price which involved a loss to them, and also the amount of such loss. Such testimony was clearly inadmissible and should have been rejected; for it was no part of the contract made by the appellant, even under the statement of the contract as given by appellees, that he would guarantee that the beeves would sell at a profit.

We deem it proper to say that, if the testimony of Addington had been admissible, it would have proved another and different contract from that set up in the petition, and, being a variance, the new trial should have been granted upon that ground.

Addington testified, amongst other things, as follows: " There was no definite sum specified to be paid defendant for his trade and influence except as stated. Belcher did not promise to give us his influence, or to solicit trade for us, and I don't want the jury to understand me as saying that he did. What he did say was, that if we traded, he would reject the offer of Hunter, Evans & Co.; that he would not work against the house of plaintiffs; and if he shipped any cattle he would ship them to our house, and that he would not ship any cattle to Hunter, Evans & Co. Defendant offered me his cattle at $22.50 per head, provided I would take Easley and Alvis Belcher's cattle at $20.50 per head. This I declined. Defendant then said that unless I would take Easley and Alvis Belcher's cattle at $20.50 he would not let me have his for less than $22.75. I then took his at the $22.75 by the direction of Mulhall, as stated. After I bought defendant's cattle I went to see Mulhall, and he said I had better take the others also, and returning in twenty or thirty minutes, I bought by Mulhall's direction the Easley and Alvis Belcher cattle at $20.50 per head. The defendant's cattle were worth from two to three dollars more per head than the Easley and Alvis Belcher cattle, because the most of them

were one year older, and one year makes an average of $2.50 difference per head."

This evidence would show another and different contract to that set up in plaintiff's petition, in that it shows that the entire sum of $22.75 per head was paid for the beeves, and that there was no contract whatever by which the appellant agreed to use his influence and solicit trade for the appellees.    For the errors above indicated the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 15, 1882.]