### CALLOWAY v. BOOE & COLLIER.
### (No. 1794.)

(Court of Civil Appeals of Texas. Texarkana. March 26, 1917. Rehearing Denied May 31, 1917.)

1. APPEAL AND ERROR ⟐1002 — REVIEW — FINDINGS—CONFLICTING EVIDENCE.

Where the evidence is conflicting, the jury's findings will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937.]

2. VENUE ⟐14—RESCISSION OF CONTRACT—MISREPRESENTATION.

A suit to rescind a contract of sale on the ground of seller's misrepresentations was properly brought in the county where the misrepresentations had been made, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 7, providing that action shall be brought where the fraud was committed.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 21, 27.]

3. EVIDENCE ⟐434(11) — VARYING WRITTEN CONTRACT OF SALE—MISREPRESENTATIONS.

In action to rescind a contract of sale on the ground of seller's misrepresentations, evidence showing and bearing upon the alleged fraudulent statements was not inadmissible on the ground that it varied the terms of the written contract, although such evidence would have been inadmissible had the suit been brought on the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2013, 2014.]

Appeal from District Court, Van Zandt County; R. M. Smith, Judge.

Suit by Booe & Collier against L. D. Calloway. Judgment for plaintiffs, and defendant appeals. Affirmed.

The suit is by appellees, Booe & Collier, buyers, against appellant, the seller, to rescind the contract of sale of cattle upon the alleged ground that the sale was procured by false and fraudulent representations of the seller. The defendant filed a plea of privilege to be sued in Wood county, the county of his residence, and answered averring that a written contract of sale, which was set out, was executed and delivered to and accepted by the plaintiffs; that such contract embodied all of the terms, agreements, and representations made by defendant to the plaintiffs; and that such representations were true. The court denied the plea of privilege, and, in accordance with the verdict of the jury, canceled the contract of sale and allowed a recovery of $1,000 paid on the contract, with interest from date of such payment.

Appellant is a resident of Wood county, Tex., and claimed to have and own a wild cattle claim in Sabine river bottom about 12 miles east of Mineola, most of the cattle being branded "L. D." on the left side and marked in the ears. The appellees live at and run a beef market in Grand Saline, in Van Zandt county, Tex. A sale of the wild cattle on the range was effected between appellant and appellees in Grand Saline, Tex., on November 21, 1914, for the sum of $1,000, one-half of which was paid in cash and the other half by note payable in 30 days. The note was promptly paid. According to the evidence offered by the appellees, the appellant represented to them that he had and owned as many as 75 head of wild cattle in the range, and had probably as many as 125 head of cattle there including calves; and that on this representation of appellant's having as many as 75 head of cattle in the range, the appellees were induced to and did agree to purchase the cattle on the range and pay the sum of $1,000 therefor. After the contract of sale was completed and the money paid, appellees, according to the evidence in their behalf, went into the range to gather the cattle that they had purchased; and after diligent search, hunting the range entirely, they found only 6 head of cattle that were owned by and belonged to appellant, and that appellant did not have and own any more than that number.

The evidence in behalf of appellant was to the effect that he owned land on Sabine river, and during several years past had been buying a few cattle at a time and placing them in his pasture. These cattle and their increase had become wild. In January, 1914, the appellant, as he says, estimated that he had and owned "at least 75 head, and possibly 100 head, of that wild bunch of cattle." These were the cattle that appellant was selling to appellees, and which were to be delivered on the range and gathered up by appellees. At the time of the sale in November, 1914, appellant, according to his evidence, did not know the exact number of wild cattle that he had on the range, and informed appellees of that fact, and that he could only estimate the number of cattle that he had there; and he agreed to sell, and appellees to purchase, whatever number of cattle that might be there, whether that number be 74,

or more, or greatly less than that number. Appellant offered in evidence a bill of sale, which he testified truly contained the entire representations and agreements passing between appellees and himself, and that appellees accepted the same at the time. The bill of sale, omitting formal parts, reads as follows:

"All of what is known as L. D. Calloway's wild cattle claim in the Sabine river bottoms about 10 to 12 miles east from Mineola, Tex., most of the said cattle being branded 'L. D.' on the left side and marked with 'crop off each ear and under back in left ear'; this sale also includes 4 head of cattle bought of Will Moody, about one year ago, branded unknown; it also includes one steer bought of Jodie Dodson, about three years ago, branded 'J' on hip; it also includes whatever unmarked and branded cattle that runs with and belongs to me running wild in the said bottoms of Sabine river, as aforesaid.

"It is understood and agreed to by and between the parties hereto that in making above sale of his wild cattle and the cattle specified, the said L. D. Calloway has estimated that he has running wild in the said bottoms about 75 head of cattle, but he, the said L. D. Calloway, in no manner guarantees that said estimate is correct and that whatever number is secured by the purchasers herein, be it more or less, the same shall be in full liquidation of the said consideration of $1,000, paid by the purchaser, as aforesaid.

"It is also understood and agreed to by and between the parties hereto that above sale does not include the following cattle belonging to the said L. D. Calloway, to wit: [Here follows description].

"It is expressly understood and agreed to by and between the parties hereto that the said L. D. Calloway is to round up all his cattle, not included in this sale, above mentioned, and put a bar under the 'L. D.' on all of his said cattle that are so branded, and that said L. D. Calloway shall hereafter mark and brand his cattle in a new brand and mark to be hereafter selected by him.

"It is also understood and agreed to by and between the parties hereto that the said L. D. Calloway shall have nothing whatever to do with rounding up and delivering any of the wild cattle sold herein by him."

Appellee's evidence was to the effect that the appellant did not tell them that he did not know how many cattle he had on the range, but definitely represented that "now," at that time, he had not less than 75 head of cattle, and possibly as many as 125 head; that "there is that many or more cattle there"; and that "upon those representations that there were not less than 75 head of cattle on the range I agreed to pay him the money, and paid him the money under that agreement that there was not less than 75 head of cattle." At the time the bill of sale was presented to them by appellant, the appellees, according to their evidence, refused to accept same and pay the money, because of the clause in the instrument making uncertain the number of cattle sold and on the range at the time. The appellees testified that they stated to appellant that he had represented to them that there were 75 or more head of cattle on the range, owned by him, and they would not accept the bill of sale and purchase the cattle unless that statement

was correct. The appellant, as appellees say, then replied that there were then "75 head of cattle, and probably 125 head of cattle, in my bunch there; * * * there is that many or more cattle there now"; that he did not have time to rewrite the bill of sale; that rather than rewrite it Mr. Cumbie and Mr. Collier might be called as witnesses to hear the statement as to the number of cattle there; and that appellant then made the same statement in the presence of the said witnesses. Appellees then paid the money, upon the representation so made as correct.

The verdict of the jury involves the finding of fact that the sale was procured by false and fraudulent representation of fact on the part of appellant that he had and owned 75 head of wild cattle on his range, and that appellees relied upon such representation and were induced to buy the cattle. As the evidence is conflicting, the findings of the jury must be sustained.

J. Matt Williams and Jones & Jones, all of Mineola, for appellant. Wynne, Wynne & Gilmore, of Wills Point, and Crawford & Carlisle, of Grand Saline, for appellees.

LEVY, J. (after stating the facts as above). [1,2] If the sale was procured by false and fraudulent representations of the seller, as alleged and as found by the jury, then the venue of the suit was properly in Van Zandt county where such alleged fraud was shown by the evidence to have been committed. Article 1830, subd. 7, Vernon's Sayles' Statutes; Howe Grain & Mercantile Co. v. Galt, 32 Tex. Civ. App. 193, 73 S. W. 828; Day v. Steverson, 145 S. W. 1062; Trust Co. v. Cowart, 173 S. W. 588. The appellant's assignments of error in this respect are overruled.

[3] If the suit had been on the contract of sale, then appellant's objection to the evidence, complained of in the several bills of exception, should have been sustained by the court upon the ground that it varied the terms of a written contract. But the petition sought rescission of the sale upon the ground that it was procured by false and fraudulent representations of the seller, and therefore the evidence was admissible as showing and bearing upon the alleged false and fraudulent representations that procured the sale. 1 Black on Rescission and Cancellation, §§ 68, 69, and 111. The cases of Luckenbach v. Thomas, 166 S. W. 99, and Box Co. v. Spies, 109 S. W. 432, relied on by appellant, are distinguishable from the case here. The Luckenbach Case was to the effect that where there was a breach of warranty in a contract of sale before the delivery of the deed, the purchaser accepting the deed containing the warranty, with knowledge of the breach, could not rescind, but could merely recover damages for the breach. The Spies Case was upon the contract for breach of it, and the defense was the instrument left out and did not include certain stipulations.

The charge of the court correctly submitted the law applicable to the case, and sufficiently presented the defenses authorized by the proper issues. The assignments of error relating to objections to the charge and the refusal of special charges should be, it is concluded, overruled as presenting no reversible error.

The judgment is affirmed.