**VON HATZFELD v. HAUBERT et al.**
(No. 9256.)

(Court of Civil Appeals of Texas. Ft. Worth. April 3, 1920.)

**1. Mines and minerals ☞78(5) — Forfeiture provision may be waived by lessor.**

Provision in oil lease, providing for forfeiture if well is not drilled within specified time, being for lessor's benefit, may be waived by lessor.

**2. Mines and minerals ☞59—Construction of lease a good consideration for modified agreement.**

The settlement of a distinctly recognized controversy of the parties to oil lease as to whether lease was subject to forfeiture was a sufficient consideration for a new and modified agreement, providing for forfeiture on failure to drill well within specified time.

**3. Compromise and settlement ☞17(1)—Settlement of dispute as to construction of contract will be upheld.**

The law favors the settlement of good-faith controversy as to construction of contracts; and agreements in settlement of such controversies, made by parties acting in good faith, will be upheld.

**4. Mines and minerals ☞78(5)—Lessor cannot declare a forfeiture after having agreed to delays.**

Lessor, after having agreed from time to time to delays in drilling of well by lessee, will not be permitted to declare forfeiture for delay after lessee with lessor's acquiescence had at much expense drilled a productive well.

**5. Mines and minerals ☞78(5)—Introduction of original lease modified by subsequent agreement in evidence held not error.**

In lessor's action to declare forfeiture of oil and gas lease, where original lease was modified by subsequent agreement, introduction of the original lease in evidence was not error, where lessor had made such lease an exhibit in his petition, and where consideration of such lease was necessary in determining whether its terms authorized a forfeiture.

**6. Appeal and error ☞882(8)—Appellant cannot complain of evidence he himself introduced.**

Appellant cannot complain of the introduction in evidence of a lease which he himself introduced.

**7. Evidence ☞385—Writing not varied in absence of fraud, accident, or mistake.**

Parties to written instruments cannot vary their terms without allegation or evidence of fraud, accident, or mistake.

**8. Mines and minerals ☞58—Lease held not void for want of mutuality.**

Lease conveying the mineral in described land, reciting that "this grant is not intended as a mere franchise," executed in consideration of $125 paid at time of execution and $200 to be subsequently paid, and providing for a forfeiture on lessee's failure to drill within specified period and the prevention of such forfeiture for one year by payment of specified amount, *held* not void for want of mutuality.

**9. Mines and minerals ☞58—Executed lease not to be held void for want of mutuality.**

Oil and gas lease, even though void in the beginning for want of mutuality, will not be *held* void for want of mutuality after lessee has executed the contract by entering upon land and exploring for oil and gas and by drilling a productive well at considerable expense.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by Charles Von Hatzfeld against A. A. Haubert and others. Judgment for defendants, and plaintiff appeals. Affirmed.

S. D. Goswick, of Mineral Wells, for appellant.

Gross & Zivley, of Mineral Wells, for appellees.

CONNER, C. J. Appellant sued to forfeit an oil lease originally executed and delivered by him to one A. A. Haubert, and later, as permitted under the terms of the lease, assigned to the Consumers' Gas & Fuel Company. This lease was dated May 11, 1917, and in form was not a mere option, but, on the contrary, it purported to grant, bargain, sell, and convey "all of the oil, gas and coal and other minerals in and under" the land therein described, and specially recited that—

"This grant is not intended as a mere franchise but is intended as a conveyance of the

property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement."

The lease further recited a consideration of $125 paid by "A. A. Haubert, also $100 more to be paid June 11, 1917, and $100 more July 11, 1917, and the failure to pay either one or both of these last one hundred dollars shall forfeit this lease." The lease further provided that if coal was found that the lessee was to pay appellant four cents per ton for every ton that was mined and marketed; that if gas or other minerals was found that the lessor was to be paid the sum of $150 for the production of each year. The lease further provided:

"That in case work is not commenced and prosecuted in due diligence (excepting fires, strikes and all unavoidable conditions) within 180 days from this date, then this grant shall immediately become null and void as to both parties; provided that second party [the lessee] may prevent such forfeiture for one year by paying to the first party the sum of a balance of $162.50, remainder due for said year until such well is commenced."

The lease further provided that:

"In case the party of the second part [the lessee] should bore and discover either water, oil or other minerals, then, in that event, this grant, incumbrance, or conveyance shall be in full force for three years from the time of discovery of said product and as much longer as oil, water, gas or other minerals can be produced in paying quantities thereon."

Appellant urged that this original lease became forfeited because of a failure of the lessee and its assignee to drill a well within 180 days.

Appellant further alleged, and set out in his petition, a later contract, which reads as follows:

"The State of Texas, County of Palo Pinto:
"Know all men by these presents that: Whereas on the 11th day of May, 1917, a certain oil and gas lease was made and entered into by and between Chas. Von Hatzfeld, lessor, and A. A. Haubert, lessee, which said lease is recorded in vol. 83, page 190, 191 and 192 of the Deed Records of Palo county, Texas; and whereas there is some difference of opinion as to the proper construction to be placed on the clause in said lease which provides for the drilling of a well on said premises: Now, therefore, it is agreed by and between the parties hereto that for the purpose and consideration of settling said difference as to said lease it is agreed that the said A. A. Haubert shall have 30 days from this date in which to begin operations for the drilling of a well on said premises described in said lease, if the said A. A. Haubert shall fail to begin operations for the drilling of a well on said premises within 30 days from this date, or he shall fail to prosecute same with due diligence to a depth of four thousand feet, unless oil or gas is found in paying quantities at a lesser depth, then said lease shall be forfeited and shall therefore be null and void and not binding on either party; but if the said A. A. Haubert shall begin or cause to be begun operations for the drilling of a well on said premises within the thirty days from the date hereof, then said lease shall remain in full force and effect with all of its terms and provisions in full force, the same as if a well had been commenced on said premises within 180 days from the date of said lease contract referred to herein.

"Witness our hands in duplicate on this the 29th day of May, 1918.

"Chas. Von Hatzfeld.
"A. A. Haubert"

It was alleged that the defendants had not complied with this additional contract by drilling a well within the 30 days specified therein, but, on the contrary, and long after the 30 days specified, "did commence and drill a well about 1,000 feet deep, at which depth they struck gas and are pumping the same off of said premises for their own use." It was further charged that this second contract, as we shall term it, was without consideration, and that the consideration had wholly failed. It was further alleged that—

"Both of said leases and contracts were without mutuality, for the reason that there was not community interest in said contract, and that plaintiff did not agree to do anything in said contract, and that he had only one purpose in signing said lease, and that was to develop his land for oil in order that he might receive his one-eighth royalty specified in said contract"; that he had reason to believe oil in abundance was under the land described in the lease, but at a greater depth than had been bored by the defendants.

The defendants answered by a general demurrer, a general denial, and further specially pleaded that the consideration of $120 and of $100 on June 11, 1917, and of $100 on July 11, 1917, had been paid as in the original lease recited and provided, and that within the 30 days specified in the second contract, set forth in the plaintiff's petition, the defendant Consumers' Gas & Fuel Company began operations for the drilling of a well on the premises, and with due diligence, at an expense of some $6,000, actually drilled a well to the depth of about 1,100 feet, and discovered "a good supply of gas in paying quantities; that plaintiff knew of said drilling operations, was often on the premises, saw the drilling operations, and never made any complaint of the manner in which the well was being drilled, or the premises developed for oil and gas, but acted and expressed himself as being pleased with the prospects and the work being done; that after the completion of said well defendant Consumers' Gas & Fuel Company, on the 6th day of November, 1918, deposited in the bank at Mineral Wells, Tex., to the credit of plaintiff, the sum of $150, the amount of the years' royalty in said lease

in case gas was discovered in paying quantities."

The trial resulted in a judgment for the defendants, and plaintiff has duly appealed.

[1] In a general way it may be stated that the evidence tends to support the allegations of fact as made in the pleadings of the respective parties. We deem it sufficient to say, however, that without determining whether the original lease was properly subject to a forfeiture because of a failure to drill a well within 180 days from its date, it is undisputed that appellant, not only failed to declare a forfeiture thereof, but by his subsequent writing of May 29, 1918, admitted by necessary implications its continued force, and expressly agreed that its terms, save as modified by the new agreement, should constitute the contract between the parties. The provision for a forfeiture if a well was not drilled within 180 days was one for appellant's benefit. He could therefore waive it. As Mr. Thornton says in his work relating to Oil and Gas (section 159):

"The right of a lessor to declare a forfeiture and re-enter on the lessee's premises because of that fact may be waived by him, and often is, either by express statements, or by conduct or by acts."

[2, 3] The settlement, therefore, of the distinctly recognized controversy of the parties of whether the original lease was subject to forfeiture was a sufficient consideration for the new and modified agreement of May 29, 1918. It was not alleged by appellant that there was any want of good faith on the part of the original lessee, Haubert, or on the part of his assignee, the Consumers' Gas & Fuel Company, in the contention that under the terms of the original lease and under the circumstances appellant was not entitled to forfeit it. The law favors the settlement of good-faith controversies of this character; and, when parties, acting in good faith, have settled such a controversy, the court will uphold agreements having that end.

[4] Moreover, there was evidence tending to show, and we must therefore impute to the court a finding to the effect, that appellant from time to time agreed to delays in drilling the well as originally provided for. We think it must be held, therefore, that the stipulations of the new agreement, as also of the original lease (except as modified) must be given force and effect. If so, it must be said that the leases under consideration have not been forfeited on the grounds alleged, inasmuch as it seems practically undisputed in the evidence that appellees, in fact, with appellant's knowledge and appellant's acquiescence, drilled a well some 1,-100 feet at an expense of some $6,000, and actually found and produced some 4,000,000 cubic feet of gas, which the evidence tends to show is in a paying quantity. The facts further show that as provided in the leases the appellees paid to appellant the $150 as specified in the event gas was found. This payment for gas seems to have been accepted by appellant without protest, and we feel no hesitation in saying that under the circumstances detailed the grounds for forfeiture, as relied upon by appellant in this case cannot be sustained.

[5, 6] Appellant assigns error to the introduction in evidence of the original lease, but there can be no merit in this contention, inasmuch as appellant made the original lease an exhibit to his petition, and the trial court would necessarily have to consider it in determining whether its terms authorized the forfeiture insisted upon by the plaintiff under the other circumstances offered in evidence. Besides, the statement of facts show that appellant himself introduced the lease in evidence.

Appellant's second assignment of error is:

"The court erred in refusing to allow plaintiff to testify that he would not have signed the contract on the 29th day of May, 1918, if he had not been made to believe by defendant that he would drill 4,000 feet for oil, and if he had not been made to believe that he would not have signed said contract."

[7] We gather from the record that this assignment embodies the real ground of appellant's effort to forfeit the lease under consideration. But the answer to the assignment is that it was not so provided in either the lease or in the modified contract, and there is no allegation that in this respect either was mistakenly written through any accident or fraud on appellee's part. The terms of the original lease were to the effect that in case the appellees "should bore and discover either water, oil or other minerals," then, and in that event, the grant should be in full force for three years "from the time of the discovery of said production and as much longer as water, oil, gas or other minerals can be produced in paying quantities thereon." In these particulars, the lease was not altered by the subsequent contract or to the effect that a failure to drill to a depth of 4,000 feet was not required "if oil or gas" was found in paying quantities at a lesser depth. It seems almost, if not entirely, superfluous to cite authorities in support of the proposition that a party to written instruments cannot vary their terms without any allegation or evidence of fraud, accident, or mistake, but see Lynch v. Ortlieb, 70 Tex. 727, 8 S. W. 515; Janes v. Brewing Association, 44 S. W. 897; Belcher v. Mulhall, 57 Tex. 19; Luckenbach v. Thomas, 166 S. W. 103; Sims v. Shaffer, 63 Tex. Civ. App. 555, 133 S. W. 702.

[8, 9] Nor can it be said, as appellant urges in other assignments, that the contracts under consideration are void as being

unilateral or for want of mutuality. As may be seen from what has already been stated, the original lease was something more than a mere option, besides which there was an actual consideration paid for its execution. Not only so, the contract was an executed one, and if void in the beginning for want of mutuality, the lessee accepted the option and executed the contract, and their acts in execution related back and made it binding from the beginning. In his Law and Practice in Oil and Gas, page 344, Mr. Archer states the rule to be that—

"Lessor cannot, after permitting entry for explorations, declare a forfeiture, or procure a cancellation of the lease upon the grounds that the lease was without consideration and void for the want of mutuality."

It would be manifestly inequitable and unjust to permit the lessor to declare a forfeiture of a grant of the kind under consideration on the ground of a want of mutuality after he has permitted the lessees, as the evidence tends to show was done in this case, to not only enter upon the leased premises for an exploration for oil and gas, but to further actually drill a well or wells at large expense in the effort to comply with the terms of the lease.

We are not called upon by. any assignment of error to determine whether or not appellees have been guilty of a want of due diligence in a further development of the property since the production of the gas well referred to in our conclusions.

All assignments of error are accordingly overruled, and the judgment below is affirmed.