### HARPER et al. v. LOTT TOWN & IMPROVEMENT CO. (No. 193–3247.)

(Commission of Appeals of Texas, Section B. March 2, 1921.)

1. **Vendor and purchaser** �520280(2)—**Purchaser's cross-bill held to plead action for breach of contract and not for fraud.**

In vendor's action to foreclose vendor's lien, in which purchasers filed cross-action, cross-bill, alleging that the vendor guaranteed sufficient irrigation for the land, and that the irrigation had not been adequate, held to set up an action for breach of contract, and not an action based upon fraud.

2. **Vendor and purchaser** �520280(2)—**Purchasers' cross-bill for breach of guaranty as to irrigation held good as against general demurrer.**

In vendor's action to foreclose vendor's lien, purchasers' cross-bill, alleging that the vendor guaranteed sufficient irrigation for the land, that the land had not been adequately irrigated, and that the purchaser had sustained damage by reason thereof, held good as against general demurrer.

3. **Evidence** �520441(8)—**Parol agreement that vendor guaranteed sufficient irrigation held inadmissible.**

Where land contract was made conditional upon the execution of water contract between purchaser and company supplying water for irrigation simultaneously with execution and delivery of warranty deed, and made no further reference to a supply of water, parol evidence was not admissible to prove that the vendor guaranteed sufficient irrigation.

4. **Waters and water courses** ⊜254—**Landowner's contract with irrigation company insufficient to make owner liable to purchaser for company's breach of irrigation contract.**

Contract between landowner and water supply company, requiring the company to furnish irrigation contracts to purchasers of land from such owner, and providing that the owner was to sell stock of water company by adding the price of the stock to the purchase price of the land sold by it for a specified commission, held insufficient to make owner of land liable to purchaser for water company's breach of irrigation contract on the ground that they were so closely allied as to be jointly liable.

5. **Corporations** ⊜188—**That the same persons were stockholders in two corporations did not make the corporations jointly liable.**

That some of the stockholders of one corporation owned stock in another independent corporation did not make the corporations liable each for the acts of the other.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Lott Town & Improvement Company against Corilla J. Harper and another, in which defendants filed a cross-action. Judgment for plaintiff in part was on its appeal reversed, reformed and rendered by the Court of Civil Appeals (204 S. W. 452), and defendants bring error. Judgment of Court of Civil Appeals affirmed.

Dawson & Anderson, of Corpus Christi, Fred E. Bennett, of Mercedes, and W. L. Dawson, of Mission, for plaintiffs in error.

Jno. P. Gause, of Mercedes, and Robt. J. McMillan, of San Antonio, for defendant in error.

POWELL, J. This is an action in debt and for foreclosure of vendor's lien, instituted in the district court of Hidalgo county, Tex., by the Lott Town & Improvement Company, a corporation, against Corilla J. Harper and her sister, Ruth. The action was for the balance due upon a note for $7,642.60, executed by the Harper sisters on April 8, 1910, including interest and attorney's fees, and which note had been given to said Lott Town & Improvement Company in part payment for the purchase of 250.16 acres of land situated in said county. Plaintiffs in error admitted the execution of the note for the amount as alleged, together with the lien as pleaded by defendant in error, but filed a cross-action against the latter and several other individuals and corporations, praying therein for the issuance of citation to each one so impleaded. However, no citations were ever issued, and none of the impleaded parties appeared; hence the suit by plaintiffs in error upon their cross-action is limited to the defendant in error.

The cross-action for damages filed as aforesaid is quite lengthy, covering some 15 typewritten pages. The contents of this pleading are set out in considerable detail in the opinion of the Court of Civil Appeals. No useful purpose could be served by quoting at length from said pleading here. Suffice it to say that it was in the nature of an action for damages, growing out of an alleged breach of a contract made and entered into by defendant in error contemporaneously

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

with the sale of the land in question, under which it is claimed the latter guaranteed sufficient irrigation for said land in the future. The damages were alleged at $60,000.

The case was tried before a jury, and submitted upon special issues. In conformity with the answers of the jury thereto, the trial court awarded judgment in favor of defendant in error for $2,873.07, which sum the judgment states is the difference between the amount due on the note, including attorney's fees, and the amount of damages sustained ·by plaintiffs in error because of the breach of their contract with defendant in error.

The Lott Town & Improvement Company perfected its appeal from the judgment of the lower court. The Court of Civil Appeals held that the pleading setting up said cross-action was subject to general demurrer; that it was an action for damages caused by deceit and fraud of defendant in error; that a peremptory instruction should have been ·given, as requested by defendant in error, instructing the jury to return a verdict in the latter's favor for the amount of the note sued upon, together with interest and attorney's fees, less credits shown thereon, and reversed, reformed, and rendered judgment accordingly. The court's opinion will be found in 204 S. W. 452. It is complete, and gives reasons at length for its judgment.

[1, 2] After a very careful analysis of the pleading setting up the cross-action, we think the Court of Civil Appeals erred in its construction of the nature thereof; that said pleading was not an action based upon fraud, but rather one grounded on a breach of contract. We are further of the opinion that, as such, it was good on general demurrer. It is not necessary to refer to the various holdings of the Court of Civil Appeals. In the main, its holdings are correct, had the cause been one to recover damages resulting from fraud. As it was not such a case, the rules of law announced by said court do not control in the proper disposition of this appeal.

The controlling question of law herein is determined by the undisputed facts in evidence. Therefore a review of the facts is first in order. There is in the record a great deal of irrelevant and immaterial testimony, and the cross-action pleaded much which might have entitled plaintiffs in error to damages against defendant in error had the evidence offered sustained said allegations. But this is not the case. On the contrary, it is only necessary to notice a few of the outstanding and undisputed facts in the record. For instance, the following:

In February, 1910, Corilla J. Harper came to Texas on a homeseekers' excursion, and landed in Hidalgo county. She went upon the land which is the subject-matter of this litigation. She was accompanied there by agents of the Lott Town & Improvement Company. She testified she was a land ex-

pert herself, having been reared by a father who was a landman; that she did not know much about water and irrigation; that she questioned her companions on this inspection trip about the irrigation, and they told her it was a new proposition, but that the water would be adequate. She also said she had been warned against irrigation companies, and wanted to be sure about their solvency. She seemed to realize the importance of being careful in contracting about irrigation. She then returned to her home in Illinois, and named one A. A. Kelly, an attorney in Hidalgo county, as her agent to continue negotiations for the purchase of this land.

On March 19, 1910, we have the next step. A contract in writing was entered into on that day by and between Lott Town & Improvement Company on the one hand and Corilla J. and Ruth Harper on the other. This contract was clear, definite, and complete, setting out all the terms of the sale and purchase of said land. Among the provisions of said contract, we find the following paragraph controlling irrigation, to wit:

"This contract is made upon condition that the La Donna Canal Company, duly organized and incorporated for the purpose of constructing and operating an irrigation system, shall execute and deliver its usual and ordinary water contract simultaneously with execution and delivery of said warranty deed to second party therein, who hereby agree to enter into and accept the same."

Said contract was signed for Corilla and Ruth Harper by A. A. Kelly, their duly authorized agent and attorney. Corilla Harper testified that she would have signed it herself, had she been present when it was executed, and she also stated that her agent was duly authorized to act in this matter.

In pursuance of said last-mentioned contract, the Lott Town & Improvement Company on April 8, 1910, executed and delivered to Corilla J. and Ruth Harper a general warranty deed, conveying to them some 250 acres of land for a total consideration of $22,927.80, one-third of which was paid in cash, and the remaining two-thirds evidenced by two notes, each for $7,642.60, maturing on or before June 1, 1911 and 1912, respectively. Said deed and notes retain a vendor's lien to secure their payment, and were in the usual form. It contained no obligation on the part of the grantor to irrigate said land, and was accepted by the grantees, who signed and delivered to the grantor the notes above described.

Contemporaneously, and on the said 8th day of April, 1910, as provided for in the contract of March, 1910, the Lott Town & Improvement Company procured for plaintiffs in error a water contract from the La Donna Canal Company, another corporation. Said contract was executed by the latter, and is

a full and complete irrigation contract, clear and definite in its terms. It shows beyond question that the La Donna Canal Company was to irrigate the land purchased by plaintiffs in error, and contains no provision obligating the Lott Town & Improvement Company to guarantee to the plaintiffs in error performance of said contract.

Corilla J. Harper visited the land often, and moved on it in 1912. She always made her complaints about the water to the La Donna Canal Company. She paid the first note given for the land, and the interest and a part of the principal of the second note. It seems that she did not assert any claim for damages against defendant in error, for alleged failure of the irrigation plant, until she was sued for the balance due on the last note.

[3] Fortunately, this case presents a record where the parties made their contracts in writing. It is quite clear that the Lott Town & Improvement Company did not breach any of the provisions of its written contracts. But, it is urged that the agents of defendant in error in February, 1910, made certain parol promises about furnishing adequate irrigation. This contention will not avail plaintiffs in error, for under well-settled rules of law, no fraud being alleged, the written instruments hereinbefore referred to constituted the final contract between the parties with reference to irrigation, into which all previous negotiations and agreements became merged. Said alleged prior parol agreements with reference to irrigation were not even admissible in evidence. They were entirely inconsistent with the written contract on the same subject, and could not affect the latter. We refer to the following authorities in support of this position: Belcher v. Mulhall, 57 Tex. 17; Milliken v. Callahan County, 69 Tex. 205, 6 S. W. 681; Lynch v. Ortlieb et al., 70 Tex. 727, 8 S. W. 515; Earle v. Marx, 80 Tex. 39, 15 S. W. 595; Jones & Carey v. Risley, 91 Tex. 1, 32 S. W. 1027; Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37; Luckenbach v. Thomas (Civ. App.) 166 S. W. 99.

Practically all of the authorities just above cited present a stronger array of facts, justifying the admission of parol testimony to vary the terms of a written contract, than the case at bar. A brief review of said cases may be helpful.

In the case of Belcher v. Mulhall & Scaling, 57 Tex. 17, the written contract was made between Belcher and J. P. Addington, agent for defendants in error and read as follows:

"Received of J. P. Addington twenty-five hundred dollars on my entire lot of beef cattle, about 1,250 head of the following brands [here the brands are set out], at the rate of $22.75 per head, to be paid for at time of delivery, the $2,500 to stand as last payment on said cattle;

said cattle to be delivered at Whitesboro and Gainesville as called for, or as near as I can conveniently do so, provided that he take them by the 15th of August.    John H. Belcher."

Mulhall & Scaling claimed that the written contract did not contain a contemporaneous parol agreement under which $20 had been fixed as the price per head of the cattle involved, and $2.75 per head had been added in consideration of other obligations assumed by Belcher. In passing upon the case, Associate Justice Stayton spoke as follows:

"There is no averment in the pleadings that by fraud or mistake anything was omitted or left out of the written contract, but it is claimed that the written contract does not contain that part of the contemporaneous parol agreement by which Belcher agreed to ship cattle to Mulhall & Scaling to be sold on commission during the year 1880, and also to use his influence among other shippers to induce them so to do, and that the same may be proved by parol testimony.

"The rule is well settled that a contemporaneous parol agreement cannot be set up to vary the terms of a written contract. Self v. King, 28 Tex. 552; Hunt v. White, 24 Tex. 653.

"In the contract under consideration there is no ambiguity which calls for parol testimony to enable the court to read it aright, but it is clear in its terms; upon its face it shows what was sold: what was to be paid per head for the cattle; how and when they were to be paid for, and when and where they were to be delivered. If in the trial of this cause under pleadings so alleging the contract to be, Mulhall & Scaling had proposed to prove by parol testimony that it was agreed between the parties at the time the written contract was made, or before that time, that for the sum which the beeves sold by Belcher would amount to at the rate of $22.75, the appellant agreed, in addition to the beeves, to sell and deliver to the appellees, upon that consideration, a given number of cows, no one would question that such evidence would be inadmissible; for it would vary the contract by adding something thereto not embraced in its terms."

In the case of Milliken v. Callahan County, 69 Tex. 205, 6 S. W. 681, Chief Justice Willie uses the following language:

"The defendants offered in evidence the order of the commissioners' court of date of September 19, 1883, which was objected to by the plaintiff on the ground that it was negotiative, and minutes occurring and entered previous to writing the contract for the building of the courthouse, and could not be introduced to vary the written contract afterwards made by the parties. This objection was sustained by the court, and the order excluded, and upon this error is assigned.

"The testimony makes it clear that the order was entered before the bond and contract were executed. The order provides that the $31,000 of bonds should be delivered to the First National Bank of Weatherford to the credit of Milliken & Co., upon the approval of the bond now in suit; the contract, made part of this latter bond, provides that the county bonds shall be delivered to Milliken & Co. at the discretion

of the county commissioners. These provisions are wholly inconsistent with each other. The commissioners could not have discretion as to the time and mode of the delivery, and yet be compelled to deliver to the bank so soon as the bond was executed.

"The question is: By which of the two are the rights of the parties to be determined? The general rule is that where the written contract is clear and certain, it must be taken to express the will of the parties, and it is not proper to look elsewhere for their intention. Jones on Com. and Trade Con., § 174. All preliminary negotiations, whether written or unwritten, which have led to the execution of the agreement, are deemed to have been absorbed and merged in it, and the writing must be taken as expressing the final views of the parties. 2 Whart. on Con. § 643.

"It may be read in the light of surrounding circumstances to explain its meaning when obscure or uncertain, but not to contradict the meaning where it is perfectly plain. Contemporaneous writings may be taken into consideration when they are reciprocally dependent, and the meaning of one cannot be wrought out without the introduction of the other; but we know of no rule which admits them for the purpose of showing that the parties did not agree upon a stipulation plainly expressed in writing, which purports to be the final and only contract made between them, unless fraud or mistake in inserting the stipulation has been proved. 2 Whart. on Con. § 665."

Justice Acker, in the case of Lynch v. Ortlieb et al., 70 Tex. 727, 8 S. W. 515, ruled parol testimony inadmissible in the following language:

"Appellant J. D. Lynch, owned a two-story business house in the city of Dallas, and on the 30th day of January, 1880, entered into a written lease for the second story of the building to appellees for a term of two years, beginning February 20, 1880. Appellees paid rent up to April 1, 1880, and went into possession of the leased premises and began business as wholesale dealers in notions. The written contract of lease contains no covenant, or representations, as to the safety or condition of the building. On April 1, 1880, a portion of the wall of the lower story of the building fell, causing damage to appellees' goods. This action was brought against the landlord, Lynch, to recover compensation for the damage thus sustained.

"On the trial appellees were permitted, over objection of appellant, to testify that Hardie, agent for Lynch, who made the contract of lease with them, represented to them, at the time the lease was executed, that the building was safe and secure. The objection was upon the ground that appellees 'sought by the evidence to vary and enlarge the written contract of lease by adding a parol covenant of warranty as to the condition and character of the building.'

"The contract having been reduced to writing and executed by the parties, they are presumed to have stated in the writing just what each party undertook to do, and their respective rights and liabilities must be determined from the language of the instrument itself. If the language of the instrument was ambiguous or uncertain, parol evidence might have been offered for the purpose of explaining what the language used actually meant. The instrument contains no warranty as to the condition or character of the building, and the effect of the evidence was to fix upon appellant the liability arising upon such a warranty, thus changing in a very material manner the rights and liability of the parties. The only covenant contained in the lease is upon the part of appellees, that they would keep the premises in repair."

In the case of Earle v. Marx, 80 Tex. 39, 15 S. W. 595, Marx made a general warranty deed to Earle, in usual form, conveying to him 750 acres of land and retaining a vendor's lien to secure the payment of three notes. The notes were not paid, and Marx entered suit for his debt and foreclosure. Among other defenses, Earle stated that before accepting the deed and signing the notes it developed that the land was community property of Marx and his deceased wife, and that her children had an interest in the title; that it was then verbally agreed that Marx should go at once and perfect the title, and that the deal was not to be considered final until and unless this agreement was performed by Marx, and that the latter had failed in its performance. Chief Justice Stayton, in passing on this matter, spoke as follows:

"The verbal agreement set up in defendant's answer was alleged to have been made contemporaneously with the execution and delivery of the deed and notes, which within themselves evidence a completed written contract, and the averments do not present a case in which the original contract was verbal and entire and a part only of it reduced to writing.

"While it has been held in that class of cases last referred to that parol evidence would be heard to show what the entire contract was, we are of opinion that the answer did not make a case in which parol evidence ought to be heard to contradict or vary the written contract, and for this reason if for no other the court below did not err in sustaining plaintiff's second special exception."

We quote as follows from a very able opinion by Judge Denman in the case of Jones & Carey v. Risley, 91 Tex. 1, 32 S. W. 1027:

"The verbal agreement determined upon a certain stone, to be cut so that the 'courses' would be of the same thickness as those in the piers of the Red River bridge, while the written contract thereafter executed left the stone and thickness of 'courses' undetermined, and authorized the engineer to determine same. Each of these two agreements relates to and provides for the same subject of contract, the fixing of some means, binding upon both parties, of determining the stone to be used, and the thickness of the courses, and they are essentially antagonistic. Under an absolute rule of law, the wisdom of which has been established by the sanction of ages, the parties are conclusively presumed to have abandoned the verbal agreement at the time they executed the written one.

"In the case of Jones & Carey v. Gilchrist, 88 Tex. 88, in passing upon the same question now before us, we said: 'As we construe the written contract entered into between plaintiffs and Jones & Carey, the antecedent oral agreements, if allowed, would clearly vary the same by substituting the oral agreements, to the effect that the stone from Red River quarry, cut to a thickness of 18 inches, could be used in building the piers, including foundations, in lieu of the provisions in the written contract above referred to, as conferring upon the engineer the power of determining the kind and quality of stone and thickness of courses."

Justice Williams, in his usual forceful style, in the case of Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37, announces the true rules in this connection as follows:

"It is clear to our minds, not only that the contract does not state the agreement contended for, but that it excludes it. By express terms it conveys the stock of lumber, situated as described, and then stipulates that the sash, etc., shall be embraced in and form a part of such stock. It states what the vendees are to do in consideration of the conveyance, i. e., to make the cash payment and give the note, and that all of such property is to become the property of the vendees upon payment of the note. The contention, in substance, is that the sash, etc., was not embraced in the stock conveyed by the writing, and was not to pass upon the doing of the specified acts by the vendees, but that they were sold and passed only by a separate contract and in consideration of other things to be done by the vendees. A more direct conflict could hardly exist. If the purpose of the mention of the sash, etc., in the writing was simply that stated in the petition, it was not expressed, but a different one was.

"It is true that sometimes parol evidence of a consideration different from or additional to that stated in a writing may be received without violating the rule that parol evidence will not be admitted to vary, contradict, or add to the written contracts of parties. It is unnecessary that we should restate the limits of this doctrine, so often explained. It certainly has no application to a case where the considerations for the acts or agreements of one party are the undertakings of the other, and both are stated in the writing, which is the case here. If it is admissible for the vendor to show that the vendees were to pay more for the property than stated in the contract, it would be equally admissible for the vendees to show that the vendor was to deliver more lumber or other property for the price stated. This would wholly ignore the rule on the subject.

"It is sometimes the case that the writing represents only a part of the contract, the other parts being expressed orally; and in such cases those parts not reduced to writing which are consistent with the writing may be shown. But this rule has no application, for the reason that the stipulations of the parties about the matter in controversy were put in writing and the effort is to show an inconsistent agreement. Belcher v. Mulhall, 57 Texas, 17. Nor, for the same reason, can the agreement alleged by plaintiff be regarded as an independent sale or a contract collateral to that expressed in the writing. Thomas v. Hammond, 47 Texas,

52. None of the authorities cited by counsel for defendant in error sustain their contention, and the case falls within none of the exceptions to the rule which excludes parol evidence to vary or contradict a written contract. The ruling of the court upon the special exception, the admission of parol evidence to show the agreement alleged by plaintiff, the charge of the court upon that point and the verdict and judgment, are all erroneous."

The case of Lukenbach v. Thomas (Civ. App.) 166 S. W. 99, is most interesting, because it resembles the case at bar in many respects. It involved a sale of irrigated land by a typical land company in Southwest Texas. A contract of sale was entered into, in pursuance of which a deed and notes in usual form were later executed and passed. Suit was then filed for debt and foreclosure. The defendants claimed a verbal guaranty, made on several occasions, under which the land company agreed that the flow of water from the well in question would be adequate to irrigate the entire tract purchased, for a period of 10 years from the date of the contract. The undisputed evidence showed that all parties admitted the latter contention to be true; that, when the deed was being delivered, the absence of the water guaranty was mentioned; that they all agreed that this guaranty was to be a part of the contract, but finally decided it would be binding upon the parties even though not included in the deed. The Court of Civil Appeals held that such a verbal guaranty could not be enforced, and that evidence of it should have been excluded by the trial court. The learned judge who wrote the opinion of the court cites authorities in support of his rulings, and the opinion bears unmistakable evidence of careful and exhaustive study and research. It did not go to the Supreme Court. However, it has been cited with approval by other Courts of Civil Appeals in the following three cases:

The case of Manley v. Noblitt et al., 180 S. W. 1154, was one in which the payee in vendor's lien notes undertook to hold two partners liable thereon, even though the papers as written showed that only one partner was to be affected. The plaintiff in the case attempted to set up certain parol agreements, made at the time the deed was executed, under which it was understood between the parties that both partners were to be held liable on the notes. Judge Carl ruled against such testimony, stating:

"All antecedent transactions, verbal negotiations, and executory contracts became merged in the final written contract evidenced by the deed and notes."

He then cites the case of Lukenbach v. Thomas and Devlin on Deeds, page 1570. In this case the Supreme Court refused a writ of error.

Again, the case of Calloway v. Booe & Col-

lier (Civ. App.) 195 S. W. 1174, was one in which it was claimed that the written contract omitted a part of the agreement as to the number of cattle. Rather than rewrite the contract, the parties agreed that they would go ahead, with a parol agreement that the contract should be otherwise than as written. That was a case based upon fraud. In passing upon objections to the evidence of such parol agreements, Judge Levy held that if the suit had been on the contract of sale, then such objections should have been sustained by the court, upon the ground that it varied the terms of the written contract. The Supreme Court refused a writ of error in this case.

The case of Chalk v. Daggett (Civ. App.) 204 S. W. 1057, was one in which suit was filed upon two promissory notes. The defendant pleaded that at the time he executed said notes, it was agreed that an accounting should be had later, and credit should be given on the notes for such sums as he might show himself entitled to in said accounting. The plaintiff excepted to the allegations setting up such defenses, on the ground that they ran counter to the rule that the terms of a written contract cannot be varied by parol. The court held that—

"The legal effect of the note was an absolute promise to pay a specific sum of money at the date stated. Its legal effect imported an indebtedness, and we do not understand that the courts will entertain and enforce a contract in parol, as such, that would wholly destroy the legal import of the notes sued upon."

The court held that the trial court did not commit any error in sustaining plaintiff's exceptions to those paragraphs of defendant's pleading, and cited the case of Lukenbach v. Thomas, supra, in support of its holding. The Supreme Court granted a writ of error in this case, making the following notation:

"We think the decision as to the ruling on the exceptions is correct, but it is in substantial conflict with Allen v. Hardware Co., 118 S. W. 1157."

From above review of the authorities, it would seem that the alleged parol negotiations about irrigation between Corilla Harper and agents of defendant in error could not be admitted in evidence to vary the written contracts, even though the latter had been silent upon irrigation problems. But it is not necessary to pass upon or go as far as the court did in the case of Lukenbach v. Thomas, supra, because the written contracts in the case at bar do cover and provide for irrigation in clear, unmistakable terms. The written contracts are subsequent to and much more definite and complete than the former verbal agreements. The latter, at all events, were very indefinite. It is not even claimed that any verbal agreements were made when any of the written contracts were executed. They were alleged to have been made about

228 S.W.—13

a month before the first written contract, and were merged into the contract of sale of March, 1910. Under that contract, plaintiffs in error unquestionably agreed to rely on the La Donna Canal Company for their water. They substituted the canal company for any others they may have had in mind in this connection. That is the clear and only construction to be placed upon the contract of sale. The parol testimony is entirely inconsistent with the written contracts, and therefore not admissible or binding upon defendant in error under any of the authorities. Plaintiffs in error had opportunities at the time of executing three separate written contracts to insert some provision showing they were looking to defendant in error to guarantee irrigation of their land. They did not do so. They voluntarily made their own contracts, and they should be bound accordingly. If it has worked a hardship, it is but a result of their own negligence, against which they cannot be heard to complain.

[4] But, it is contended that the defendant in error and the La Donna Canal Company were so closely allied in the furnishing of irrigation, and were so interlocked in their directorates and stockholders, that the liability of one should be that of the other; in other words, that they were one and the same concern. There is no evidence to show any such relation between the parties as would, under the law, sustain this contention. The only connection between the defendant in error and the La Donna Canal Company grew out of a written contract executed in July, 1909, between defendant in error and the La Donna Land Syndicate. This contract is in writing, and very clear and complete in its terms. It provided that the La Donna Land Syndicate would have the La Donna Canal Company, over which it exercised control, to furnish to purchasers of land from defendant in error irrigation contracts in the usual and customary form; that defendant in error, in turn, would become a selling agent of the capital stock of the La Donna Canal Company, selling the shares at $10 each. The defendant in error was to add this much to the price per acre of the land it had sold, and was to collect the same from the purchasers of the land. This amount when collected was to be turned over to the La Donna Canal Company at certain times. As a further consideration for the work in selling the stock of the canal company, the defendant in error was to receive a commission of 20 per cent. There is no evidence showing that there was any further connection between the defendant in error and the La Donna Canal Company than that authorized by the written contract above referred to. We will say, too, by way of parenthesis, that under the express terms of the contract between defendant in error and the land syndicate, it was provided that after the watering contracts

had been delivered by the canal company to purchasers of the land, said purchasers were to look solely to the La Donna Canal Company for the performance of the obligations under said contracts.

[5] We cannot agree that the La Donna Canal Company and defendant in error are jointly liable, each for the acts of the other, just because, in part, the same men happened to own stock and be interested in the management of each. Six men might decide to develop two different industries. They might incorporate one company, whose main business is the selling of land. Another might be formed for the principal purpose of irrigating those lands and other tracts. They would be entirely separate and distinct concerns, and neither, in any sense, liable for the obligations of the other. In the case at bar, the evidence, most strongly construed for plaintiffs in error, shows only that a part of the stock of the defendant in error and the La Donna Canal Company was under joint ownership. The fact is that the canal company adopted the very natural policy of scattering its stock among the owners of the land to be served by its plant. Those who testified on this point clearly established the fact that these are separate and independent legal entities.

The case of Corsicana Transit Co. v. Walton (Civ. App.) 189 S. W. 307, presented a very much stronger array of facts than the case at bar. In that case the Court of Civil Appeals held that no such relation existed between the codefendants as would make one liable for the acts of the other. The Commission of Appeals, in an opinion in 222 S. W. 979, affirmed the holding of the Court of Civil Appeals. The Supreme Court approved said action of the Commission of Appeals. In fact, it appears from this decision that it was so written because it did express the opinion of the Supreme Court itself.

Under the authority of the case just above referred to, and under general principles of law which we think have always obtained, there is no merit in the contention that the La Donna Canal Company and defendant in error were so closely allied as to render one liable for the acts of the other, and especially so under all the evidence in this record.

It is not necessary to pass upon the other questions raised. It follows, from what has been said, that we do not think the plaintiffs in error are entitled to recover anything on their cross-action as against defendant in error. Whatever action they may have is against the La Donna Canal Company. It may have breached its contract, although there are many provisions of said contract under which it might urge defenses. We do not pass upon these, for the La Donna Canal Company was not cited, and has not had its day in court.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.