**ELDORA OIL CO. v. THOMPSON et al.**
(No. 1782.)

(Court of Civil Appeals of Texas. Amarillo. March 30, 1921. Rehearing Denied May 4, 1921.)

**I. Appeal and error ☞596—Appellant required to see that transcript is properly made up.**

It is the appellant's duty to see that the transcript is properly made up.

**2. Appeal and error ☞518(4)—Original answer, having been amended, should be omitted from the record.**

Original answer, having been amended, should have been omitted from the record.

**3. Appeal and error ☞748(1)—Assignments attacking sufficiency of pleading considered notwithstanding violation of briefing rules.**

Assignments of error questioning the sufficiency of plaintiff's pleading as against general demurrer will be considered under Courts of Civil Appeals rule 62a (149 S. W. x), though they do not fully comply with the rules of briefing, since they present fundamental error.

**4. Reformation of instruments ☞36(3)—Allegations held to allege mutual mistake warranting admission of parol testimony as to actual agreement.**

Allegations that a contract "does not clearly state the minds of the parties" and "does not speak the truth of the agreement, and the minds of the parties did not meet in said writing, but did meet and agree to the effect," etc., *held* sufficient to allege a mutual mistake so as to warrant admission of parol testimony as to the actual agreement.

**5. Contracts ☞346(3)—Facts showing construction by parties of oil well drilling contract as to liability for underreaming held admissible under pleadings.**

In action for services in drilling oil well, facts showing that the defendant construed the contract so as to entitle plaintiffs for services in underreaming the casing, by payment for such services during certain months, and that defendant was estopped to deny liability for underreaming by plaintiffs, *held* admissible under the pleadings.

**6. Appeal and error ☞1052(5)—Admission of testimony held harmless in view of jury's finding.**

In action for services in drilling oil well, the admission of testimony as to the customary price for rotary drilling, if error, was harmless, where jury found in accordance with the contract price.

**7. Appeal and error ☞742(5)—Assignments not considered where statement under assignment insufficient.**

Assignments that court erred in overruling exceptions to court's main charge, without informing court in the brief what the exceptions were and what parts of the main charge they were directed against are without sufficient statements under the assignments, as required by Court of Civil Appeals rule 31 (142 S. W. xiii), and will not be considered.

**8. Appeal and error ☞747(3)—Cross-assignment should be filed in lower court.**

Cross-assignment not having been filed in the court below as required by district court rule 101 (159 S. W. xi), and not presenting fundamental error, will be disregarded.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Karl Thompson and another against the Eldora Oil Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Carrigan, Montgomery, Britain & Morgan and Bert King, all of Wichita Falls, for appellant.

Cox & Keys, of Wichita Falls, for appellees.

HALL, J. Appellees, Karl and Geo. F. Thompson, instituted this suit against appellant company to recover $4,110.63, alleged to be due them for work in drilling an oil well for appellant in Wichita county. The substance of the petition is that plaintiffs entered into a written contract to drill a well for defendant on certain premises described in the petition, and that by the terms of said contract the defendant agreed to pay plaintiffs the sum of $4 per foot for the first 1,000 feet and $5 per foot for the next 500 feet and $6 per foot for the next 500 feet, and further contracted and agreed to pay plaintiffs the sum of $100 per day for underreaming, testing, cleaning, or swabbing the said well; that plaintiffs entered upon the premises and drilled said well to the depth of 1,950 feet; that during the drilling plaintiffs were compelled to underream the casing on several occasions, for which defendant made settlement up to the 1st of May, 1919, according to the terms of the contract; that the well has been completed in accordance with the contract, and, although plaintiffs have demanded the amount due them, defendant has failed and refused to make payment; that during the month of May plaintiffs were underreaming the well 8 days and 15 hours, at the rate of $100 per day, aggregating $877.30; that during the month of June they were underreaming 6⅓ days, aggregating $633.30, and during the month of July they were underreaming 13 days, aggregating $1,300; that plaintiffs have received on said contract the sum of $7,900, leaving a balance due and owing them of the sum of $4,110.63, which defendant has refused to pay, to their damage in the sum of $5,000. On January 15, 1920, the defendant filed its original answer, the substance of which it will be unnecessary to set out. On the same day plaintiffs filed their first supplemental petition, containing general and special demurrers, general denial, and in reply to defendant's cross-action alleged that the defendant had its officers and agents present at all times during the drilling of the well, and never complained of the amount of fuel oil being used, and that, if there was any excess, it was caused by the carelessness of the defendant in furnishing the same; that defendant furnished an oil which was light and thin and would not produce the heat and give the results produced by regular fuel oil, requiring a greater quantity; that the water furnished plaintiffs was muddy, taken from a tank of stagnant water; that the mud settled in the boiler and in the flues, causing additional expense and trouble to plaintiff in cleaning the same and requiring, by reason of that fact, more fuel. Then follows this paragraph:

"In further reply to the answer of defendant, these plaintiffs say that the bill for underreaming, as set out in plaintiffs' original petition, was fully understood by the defendant and plaintiffs, and the terms of the contract setting forth said item was mutually understood and acted upon by both parties, and these plaintiffs rendered the defendant bills for said underreaming and for delays from time to time during the progress of the drilling of said well, and the same were acted upon and paid by the defendant, except the time and as set forth in plaintiffs' original petition, said bills and underreaming and delays being rendered separate and paid for separate from the drilling, and these plaintiffs say that defendant is now estopped from setting up a different construction of said contract and denying their liability for said underreaming."

On May 18, 1920, defendant filed its first amended original answer and cross-bill, in which they demur generally to the petition, deny generally the allegations of the petition, and specially allege the execution of the contract, and say further that they were to pay $100 per day for delays caused by them, and then only in connection with the delays in testing sands. The contract is made an exhibit to the pleading. By way of cross-bill they sue to recover for an excessive use of fuel oil by plaintiff, alleging that defendant had agreed to furnish fuel oil for drilling purposes; that plaintiff used in drilling a boiler that was out of repair, and by reason of this fact and of the negligence and carelessness of plaintiffs they consumed in drilling said well an amount of oil far in excess of what was reasonably necessary for that purpose, wherefore they have been damaged in the sum of $300; that defendant was compelled to pay, under protest, $254.50 for labor in assisting plaintiffs to pull the casing during the drilling when the contract expressly bound plaintiffs to furnish all necessary labor; that defendant was compelled to pay $100 by reason of the negligence of plaintiffs in tearing down and injurying the derrick—to their total damage in the sum of $5,000.

On May 18, 1920, plaintiffs filed what is termed a "second supplemental petition," "as a reply to defendant's amended petition, and as a supplement to all of plaintiff's other pleadings, and not waiving any formal pleading." This contains what plaintiffs call an exception, but, when properly construed, is a plea of payment of the item of $254.50. It is further alleged therein, in substance, that the matter of pulling the casing from the well was done after the suit was filed and under and by virtue of a verbal contract, and

"defendant paid same under a fair settlement made at its own solicitation, and is now estopped from denying the same." Following this is the fourth paragraph, alleging:

"Further answering said petitions, plaintiffs say that the paragraph of defendant's said petition wherein it claims $100 by reason of the negligence of plaintiffs in tearing down and injuring said derrick is indefinite, uncertain, and does not put these plaintiffs on notice of what defendant is claiming, and of this plaintiffs pray the court to strike out said paragraph, and hold the same for naught; that they do not know what said $100 is claimed for, and the only trouble that was had during the time was that the belt jumped from the bull wheel, which was no fault of these plaintiffs, and caused some little trouble."

On May 18th plaintiffs filed a pleading styled "trial amendment," in which they allege:

"That the contract described in plaintiffs' original petition and referred to and copied in defendant's amended original answer is ambiguous and uncertain and does not clearly state the minds of the parties with reference to the fourth paragraph thereof, wherein it is stated as follows: 'Parties of the second part agree to furnish party of the first part with a log of said well and to permit party of the first part to measure the same at any time. Should the formation in drilling said well show oil or gas in any sand, parties of the second part agree to shut down and notify party of the first part or its representative, who shall get instruction about drilling into said formation, and during which period of time of testing, cleaning, or swabbing the well, or pulling the casing, or underreaming, or any other such diversion, from drilling, caused by said party of the first part, it is to pay party of the second part $100 per day'—that the agreement of the parties, which they undertook to reduce to writing, was that the first party, the defendant herein, was to pay to the second party, the plaintiffs herein, the sum of $100 per day for all extra time, including testing of any sand and cleaning out the well at such time and for swabbing the well and for underreaming; that the minds of the parties met as to what the written contract should be, to the effect that for all extra time in cleaning or testing sands, and especially for all time spent in underreaming the said well, the first party, or the defendant herein, should pay to the second party, the plaintiffs herein, the sum of $100 per day, based upon two towers, or a full day of 24 hours; that in drawing said contract the same was drawn as hereinabove set out, which said reading is ambiguous and uncertain as to said matters, so that the same does not speak the truth of the agreement as made between the parties, and cannot properly be construed and interpreted except as explained by verbal testimony as to the meaning and intent of said paragraph between the parties at the time of making said contract. Plaintiffs would further show to the court that at the time they signed the contract their interpretation of the same as they understood it and signed it was that they were to be paid $100 per day for underreaming, and, if said contract should be construed to mean otherwise in the reading of the paragraph above stated, that then the same does not speak the truth of the agreement, and the minds of the parties did not meet in said writing, but did meet and agree to the effect that plaintiffs were to be paid the said $100 per day for all underreaming done in the said well; that such construction of the contract was agreed to after same was signed by the parties and acted upon between the parties under such construction, and therefore becomes binding upon both parties, and especially upon the defendant under the action of the parties, and the agreement as to the construction of the same, after said contract had been signed and acknowledged. Wherefore plaintiffs pray for permission to offer oral testimony to show the meaning of the above-mentioned paragraph of said contract and to show the true intent of the parties at the time of entering the same, and for judgment as prayed for in their original petition and supplements filed herein."

On the 19th day of May, 1920, defendants filed a pleading styled "defendant's amended and supplemental answer," in which they demur to the plaintiffs' trial amendment generally—

"for the reason that same is not a trial amendment as that term is defined in law, but that same is a supplemental petition, setting up a new cause of action from the one as alleged in their original petition, or plaintiffs' first supplemental petition; that this petition was filed after announcement of ready for trial and after plaintiffs had proceeded at some length with their testimony, and the court having held that the meaning of said paragraph in question in said contract was possibly indefinite, and that it was not clear as to its meaning, and that plaintiffs not having pleaded those facts and was offering evidence along that line when the court sustained objections to the evidence, but permitted plaintiffs to file said petition as a trial amendment and designating it as such, to which defendant excepts both as to its substance and the time of filing, for the reason that it is not properly a trial amendment, and, if other than a trial amendment, then it was filed too late to require the defendant to answer thereto, and of this defendant prays judgment of the court."

There is a further exception to the trial amendment, upon the ground that it seeks to change the terms of a written contract, without pleading mutual mistake, fraud, or misrepresentation. It is further alleged that the paragraph of the contract set out in the trial amendment provides the only conditions under which defendant was to pay for underreaming said well; that plaintiffs at no time shut down on drilling on account of any showing of oil or gas therein; that defendant did not give to plaintiffs any instructions about the drilling into any formation nor did it give any instruction with reference to shutting down for the purpose of testing the same, but that plaintiffs drilled steadily forward from the beginning until the well was finished; that said paragraph is clear

and concise in its meaning, and that the pleadings as set up by plaintiff in his trial amendment seek to change the terms of the written contract, and contravene the provision of said contract between the parties, and defendants are not liable for said charges or extra labor so pleaded by the plaintiffs, and of this they pray judgment of the court.

We have copied from the pleadings appearing in the transcript, giving the dates upon which the various pleadings were filed, in order to call attention of counsel to the irregular and confusing manner in which the issues were presented in the lower court, entailing an unnecessary amount of labor in considering the various contentions urged here. The fundamental rules of pleading, as prescribed by the Supreme Court, and governing the district and county courts, have been in a great measure disregarded. The pleading termed a "trial amendment" is not a trial amendment when tested by district court rule 27 (142 S. W. xix). No exceptions to any previous pleadings had been presented or sustained. It does not refer to the pleading which it was intended to amend and did not close the pleadings for the plaintiff, because a second supplemental petition was thereafter filed. Plaintiff filed a first supplemental petition on January 15, 1920, without designating any previous pleading of the defendant to which it was intended as a reply. In fact, defendant had filed no pleading to which the first supplemental petition could have properly referred. On May 18th a second supplemental petition was filed, which should have been a first amended supplemental petition. This last pleading was more in the nature of an amendment, as such a pleading is described by district court rule No. 12 (142 S. W. xviii). Its substance does not bring it within district court rule No. 5 (142 S. W. xvii). Defendant's pleading styled "defendant's amended and supplemental answer" is not in fact an amendment of its former pleading, as required by district court rule No. 12, and is not styled in accordance with district court rule No. 13 (142 S. W. xviii).

[1, 2] It is the duty of the appellant to see that the transcript is properly made up (Stark v. Whitman, 58 Tex. 375); and district court rule 85 (142 S. W. xxiii) requires that the proceedings in the trial court shall be entered in the transcript in the order of time in which they occurred, unless with the approval of the judge counsel on each side shall agree in writing to be itself filed and copied in the transcript, directing the clerk which of the papers may be left out. Under this rule the original answer, having been amended, should have been omitted, as no question was urged in this court why it should be regarded as part of the record. District Court Rule 14 (142 S. W. xviii). By reference to the date of filing of the foregoing pleadings, it will be seen that the clerk has ignored rule 85, and under the Stark Case, supra, this violation of the rule is chargeable to appellant. We feel justified in calling these matters to the attention of counsel in view of the crowded condition of the dockets of the appellate courts and in the interest of a speedy disposition of the business of such courts.

[3] The fourth paragraph of the written contract, copied above in the trial amendment, when construed strictly in accordance with the language used, would entitle the appellees to recover for services in underreaming only in the event such diversion from the regular course of drilling was caused by the appellant. It appears that during the trial, when appellees offered evidence to prove the number of days which they had devoted to underreaming, appellant objected to such proof upon the ground that they were entitled to recover only when the underreaming had been caused by it under this paragraph of the contract, and that appellees had not alleged that the paragraph was so written through fraud, accident, or mutual mistake. The court sustained this objection, but permitted appellees to file the instrument styled a trial amendment, for the purpose of rendering such testimony admissible. After the filing of the trial amendment, and after the court had overruled general and special exceptions to it, the evidence tending to prove the item claimed for underreaming was admitted, and the action of the court in overruling the exceptions to the trial amendment, and in admitting this evidence, and in overruling the general demurrer to the trial amendment, and the original pleading, which it purported to amend, is the ground of complaint urged here by the first, second, third, fourth, and twelfth assignments. These assignments do not comply fully with the rules of briefing, but, since they in effect question the sufficiency of plaintiff's pleading as against a general demurrer, they present fundamental error, and for that reason, under rule 62a of Courts of Civil Appeals (149 S. W. x), they will be considered.

[4] District court rule 17 (142 S. W. xviii) provides that every reasonable intendment arising upon the pleading to which a general demurrer is urged shall be indulged in favor of its sufficiency. While the trial amendment does not, in specific language, allege that the fourth paragraph of the contract was written through mutual mistake of the parties, it is asserted therein that it "does not clearly state the minds of the parties," and "the same does not speak the truth of the agreement, and the minds of the parties did not meet in said writing, but did meet and agree to the effect that plaintiffs were to be paid the said $100 per day for all underreaming done in the said well." We think these allegations sufficiently allege a mutual mis-

take in writing paragraph 4 of the contract and are full enough to admit the proof.

The fifth assignment of error is multifarious. Only one of the points presented in the assignment is urged in a proposition following it. The statement under this proposition does not throw any light upon the matter presented. The only reference anywhere in the assignment, proposition, or statement to the record is this paragraph, preceding the assignment:

"See paragraph 9, defendant's motion for new trial, Tr. p. 40, shown by bill of exception No. 5, Tr. p. 53."

Neither the bill of exception referred to nor its substance is further set out. The statement is simply an argument, based upon evidence, "which evidence is complained of later in this brief," and we are nowhere referred either to the record or to any subsequent page of the brief where the evidence may be found, nor what the evidence is, to which counsel refers. If, however, we accept the conclusions of counsel as expressed in the statement and admit that the court erred as is asserted in the assignment, the error is harmless.

[5] Under the sixth assignment it is insisted that the court erred in permitting certain witnesses to testify with reference to a meeting at the hotel and the understanding there as to the contract and the acquiescence of Findley as to the underreaming being done. We are not informed who Findley was. Neither the bill of exception nor its substance is set out in the statement, but we infer from the brief that the testimony was admitted in support of appellee's plea of estoppel, and in proof of the facts showing a practical construction of the contract by the parties by having paid for underreaming done prior to the month of May. Any evidence showing these facts was admissible under the pleadings.

[6] Under the seventh assignment it is contended that the court erred in permitting the witness Champion to testify, over defendant's objection, with reference to the customary price for rotary drilling in the Electra field. The statement does not refer to the bill of exception taken to the admission of this testimony, but, if it be admitted that the court erred, the error is harmless, since the jury found in accordance with the contract price.

It is urged by the eighth assignment that the court should have directed a verdict in favor of appellants. This assignment is also overruled.

The ninth assignment is:

"The court erred in overruling defendant's exception No. 1, to the court's main charge."

[7] The tenth and eleventh assignments are that the court erred in overruling the defendant's exceptions numbered 2 and 3, respectively, to the court's main charge. We are not informed by the brief what these exceptions were, nor is there any intimation in the assignments as against what parts of the main charge the exceptions were directed. The statements under these last two assignments are not statements at all, as required by Court of Civil Appeals rule No. 31 (142 S. W. xiii). The assignments, therefore, are not considered.

[8] Appellee presents a cross-assignment, which it appears has not been filed in the court below, as required by district court rule No. 101 (159 S. W. xi). The cross-assignment does not present fundamental error, and is therefore disregarded.

Finding no reversible error, the judgment is affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes