**ELDORA OIL CO. v. THOMPSON et al.***
**(No. 324–3673.)**

(Commission of Appeals of Texas, Section B. Oct. 25, 1922.)

**1. Mines and minerals &copy;=>109—Contract held to entitle drilling contractor to compensation for underreaming only when requested.**

Where a drilling contract provided for payment of certain sums for each foot drilled, and provided further that, should the formations in drilling show oil or gas in any sand, the contractor agreed to shut down and notify owner, "who shall give instructions about drilling into said formation and during which period of time of testing, cleaning or swabbing the well or pulling the casing or underreaming, or in any other such diversion from drilling caused by party of the first part [owner], is to pay to party of the second part [contractor] $100 per day," the contractor was entitled to compensation for services in underreaming only when requested by the owner.

**2. Cancellation of instruments &copy;=>43—Allegations held not to raise issue of fraud, accident, or mistake in execution of unambiguous written contract so as to warrant admission of extrinsic evidence.**

Allegations that a contract "does not clearly state the minds of the parties," and that it "does not speak the truth of the agreement, and the minds of the parties did not meet in said writing, but did meet and agree to the effect" that contractors were to be paid for all underreaming, *held* not sufficient to raise the issue of fraud, accident, or mistake in the execution of the contract, so as to warrant admission of extrinsic proof that the parties agreed that contractor was to be paid for all underream-

ing, though the written contract clearly provided otherwise.

**3. Cancellation of instruments ⬤�ький43—One who attempts to cancel contract for fraud, accident, or mistake must plead and prove the facts relied on.**

One who attempts to cancel or render invalid a contract on the ground that it was obtained by fraud, accident, or mistake must plead and prove the facts by which he proposes to invalidate or avoid it.

**4. Evidence ⬤➙397(1)—Not admissible to contradict terms of unambiguous written contract.**

Evidence is not admissible to contradict the terms of a clear and unambiguous contract, in the absence of allegations and proof showing a mistake of fact or law in the execution of the contract.

**5. Contracts ⬤➙245(2)—Previous negotiations merged in written contract.**

All previous negotiations leading up to the execution of a written contract are merged into the contract.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Karl Thompson and another against the Eldora Oil Company. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (230 S. W. 738), and defendant brings error. Reversed and remanded, with directions.

Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, for plaintiff in error.

P. B. Cox, of Wichita Falls, for defendants in error.

POWELL, J. The Eldora Oil Company employed Karl and George Thompson to drill an oil well in Wichita county, Tex. The terms of the employment were evidenced by a contract in writing executed by the oil company, as party of the first part, and the Thompsons, as parties of the second part. Upon the completion of the well, a dispute arose between the parties as to the balance due the Thompsons under the contract. Being unable to adjust these differences, the latter instituted suit in the district court of Wichita county, Tex., to enforce their contentions. Upon a trial before a jury, the district court entered a judgment in favor of the plaintiffs against the oil company for something more than $3,000, and including the entire amount claimed by the Thompsons for underreaming, which will be hereafter discussed at length. The oil company appealed the cause to the Court of Civil Appeals at Amarillo, where the judgment of the district court was affirmed. See 230 S. W. 738. The Supreme Court, upon proper application therefor by plaintiff in error, granted a writ of error, and the cause is now before us for examination and recommendation.

The contract in suit provided for the payment of certain sums for each foot drilled by the Thompsons. No controversy arose over these provisions. The cause of the litigation was the fourth paragraph of the contract, reading as follows:

"Should the formations in drilling said well show oil or gas in any sand party of the second part agrees to shut down and notify party of the first part, or its representative, who shall give instructions about drilling into said formation and during which period of time of testing, cleaning or swabbing the well or pulling the casing or underreaming, or in any other such diversion from drilling caused by party of the first part, is to pay to party of the second part $100.00 per day."

The oil company contended that aforesaid clause of the contract, the only one making any provision at all with reference to underreaming, was clear and free from ambiguity; that, under its very terms, it owed the Thompsons for such underreaming only as was done at its request. On the other hand, the defendants in error contended that they were to be paid $100 per day for underreaming they voluntarily did.

We do not deem it necessary to set out the nature of the pleadings, except in so far as may be applicable to the question we shall hereafter discuss. The Court of Civil Appeals has analysed all the pleadings at considerable length.

Upon the trial of the case, the district court stated that he inclined to think that aforesaid paragraph of the contract was not entirely clear, and that he would, upon proper pleadings, admit parol testimony to explain what the parties had in mind when the contract was executed. But he said that there was no pleading setting up any contention that the contract was ambiguous. Following this suggestion from the court, attorneys for the Thompsons filed a trial amendment, alleging the ambiguity of the contract, and stating, at considerable length, that it was the intention of the parties to provide for payment of all underreaming, whether ordered by the oil company or not.

The Oil Company seasonably filed its exceptions to this trial amendment, objecting to its being filed that late in the proceedings, and excepting to it on many other grounds, all of which were overruled by the court. After the filing of the trial amendment, the court admitted all kinds of evidence explaining this paragraph of the contract, and what the parties intended to contract to do.

The particular exception urged by the oil company which has its bearing upon the controlling question in our opinion reads as follows:

"Now comes the defendant, and further excepts to plaintiff's purported trial amendment, and says that the same is insufficient because

it sets up facts and tries to change the plain terms of a written contract without pleading mutual mistake, fraud or misrepresentation in the drawing of said contract, and of this defendant prays judgment of the court."

Not only did the oil company except to the trial amendment as above set out, but it excepted in a like manner to all evidence admitted by the trial court which varied the terms of paragraph 4 of the contract in suit. The court overruled all of these exceptions, and admitted this testimony as heretofore stated. Upon the strength of this evidence, the jury found, in response to special issue submitted, that the parties really contracted to pay for all underreaming done with or without orders from the oil company. Upon this finding, the larger portion of the amount recovered in the judgment was based. In passing upon the paragraph of the contract in question, the Court of Civil Appeals says:

"The fourth paragraph of the written contract, copied above in the trial amendment, when construed strictly in accordance with the language used, would entitle the appellees to recover for services in underreaming only in the event such diversion from the regular course of drilling was caused by the appellant."

[1] We think the Court of Civil Appeals clearly correct in this conclusion. Under the terms of the contract, the Thompsons were to do the drilling, including the various kinds of work incident thereto, and complete the well to a certain depth at so many dollars per foot; the compensation increasing with the depth of the well. Paragraph 4 simply provides for stated compensation for work of various kinds done during a period of diversion from the regular course of drilling, which period would occur should the formations in said well show oil or gas. There is no contention that any such period arose, or that any underreaming was requested by the oil company.

Under the conclusion of the Court of Civil Appeals just discussed, the evidence admitted tending to set aside and contradict this written contract was inadmissible, unless in response to a pleading setting up fraud, accident, or mistake in the execution of said contract. The Court of Civil Appeals recognizes this rule, and then held as follows:

"While the trial amendment does not, in specific language, allege that the fourth paragraph of the contract was written through mutual mistake of the parties, it is asserted therein that it 'does not clearly state the minds of the parties' and 'the same does not speak the truth of the agreement, and the minds of the parties did not meet in said writing, but did meet and agree, to the effect that plaintiffs were to be paid the said $100.00 per day for all underreaming done in the said well.' We think these allegations sufficiently allege a mutual mistake in writing paragraph 4 of the contract and is full enough to admit the proof."

[2] Many of the assignments presented by plaintiff in error are based upon the one contention that the pleadings do not allege "mutual mistake" so as to authorize parol testimony which would vary the terms of the written contract. We think these assignments should be sustained, and that the Court of Civil Appeals erred in concluding that the pleadings were sufficient to admit this extrinsic proof. The trial amendment was merely alleging ambiguity, and not mistake. The portions of it quoted by the Court of Civil Appeals are the only portions which could possibly, under any construction, allege mutual mistake. Do these allegations do so? We think not. As stated by the Court of Civil Appeals, the pleading certainly does not, in specific language, allege mutual mistake. Not only so, but, in our judgment, the allegations do not set up facts which satisfy the requirements of our law in establishing mutual mistake which would set aside a written contract. It must be remembered that there is not a single allegation of any kind even remotely charging fraud on the part of the oil company. There is no charge of any misrepresentation, either willful or innocent, on the part of the company as an inducment to the Thompsons to sign the contract. All the parties to this contract seemed to be experienced oil field folks. Neither party seemed to have any natural advantage over the other.

In this state of the case, what is "mistake" under our Texas decisions? We quote as follows from our Supreme Court in the case of O'Connell v. Duke, 29 Tex. 309, 94 Am. Dec. 282:

"'It is well settled, as a general rule, that where parties have contracted in ignorance or mistake of a fact material and essential in the inducement to and formation of the contract, which mistake injuriously affects the rights and interests of one of the parties under the contract, a court of equity will grant relief against the consequences of the mistake. This general principle applies, not only to cases where there has been a studied suppression or concealment of material facts by one of the parties which would amount to a fraud, but also to many cases of innocent ignorance and mistake on both sides.' 1 Story, Eq. Jur. § 141; Hill v. Buckley, 17 Ves. 394.

"In cases where relief is granted, it is only where the mistake is made out clearly and satisfactorily, and this upon the ground that the contract, as it is, ought to be treated as a full and correct expression of the intention of the parties, until the contrary is established with reasonable certainty. When it is so established, and the right of the injured party is not impaired by a failure on his part to use proper precaution and diligence, the relief is usually granted. Contracts for the sale of land are not an exception to this general rule, but are as much amenable to its principles as other contracts are."

Again, in the case of Lott v. Kaiser, 61 Tex. 669, Judge Stayton says:

"The same author thus defines the word 'mistake.' 'Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception or conviction, induced by ignorance, misapprehension or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both of the parties to a transaction, but without its erroneous character being intended or known at the time.' 2 Pomeroy's Equity, 839."

The definition approved by Judge Stayton, and just quoted by us, has frequently been followed by our Courts of Civil Appeals.

There is no allegation in the pleadings in the case at bar that either, much less both, of the parties executed this contract "in ignorance or mistake of a fact material and essential in the inducement to and formation of the contract." It is not alleged that either of the parties was mistaken as to any fact with reference to the subject-matter of the contract. The only allegation is that the parties did not contract as the very instrument in question shows they did contract. This is not an allegation of mistake, but a denial of a fact, and went only, as it was intended it should, to the explanation of a contract claimed to be ambiguous.

Proof offered must have basis in the pleadings. Our Supreme Court, in case of Denison v. League, 16 Tex. 408, says:

"There is no rule that has been so stringently enforced in this court, as the rule that the allegata must be broad enough to let in the proof, and that no evidence, not supported by the allegata, can sustain a verdict. This rule has been always considered as essential to our system of jurisprudence, and giving harmony to the system."

[3] If one attempts to cancel or render invalid a contract on the ground that it was obtained by fraud, accident, or mistake, he must plead and prove the facts by which he proposed to invalidate or avoid it. Upon this point, our Supreme Court, in case of Kelly v. Kelly, 12 Tex. 453, says:

"It was pleaded and relied on by the defendant in bar of the action; and, if genuine and valid, effectually precluded a recovery on behalf of the parties to it. Its execution or genuineness not having been questioned by pleading, or put in issue as prescribed by the statute, the defendant was not required to prove its execution, or adduce other evidence in its support. Hart. Dig. art. 741. It had been pleaded and made profert of more than three years before the trial; and it would seem there had been ample time to controvert, by pleading and evidence, its genuineness and legal effect. If a forgery, or not the act of the plaintiffs, its genuineness should have been put in issue; or, if obtained by fraud, accident, or mistake, or if canceled, or for any other cause invalid, *the facts by which it was proposed to avoid or invalidate it should have been pleaded and proved.*"

In the case at bar, no facts were pleaded which constituted the "mistake." Along this same line Judge Lipscomb, in case of Horan v. Long, 11 Tex. 231, says:

"The appellant Horan, in his answer, claimed that there was a mistake in the settlement, and that appellee had not charged himself, in the settlement, with indebtedness on his own personal account, that ought to have been charged; but, he does not allege fraud, nor that there was any mutual mistake." * * *

"The proposition will not be controverted, that, to enable the appellants to open and go outside the contract, it must be done on the ground of fraud or mistake; and this must be so averred by them, as to admit evidence in support of such charge. In the answer, there is no pretense of fraud on the part of the appellee, in procuring the contract. A mistake is averred; but not a mutual mistake of the parties."

[4] Briefly, the allegations and evidence in question do not allege or show any mistake of fact or law in the execution of the contract, but do tend to contradict the terms of a clear and unambiguous written contract. Such evidence is not admissible. Our Supreme Court states the rule in this connection very forcibly in the case of Soell v. Hadden, 85 Tex. 187, 19 S. W. 1089, as follows:

"If there is no ambiguity about an instrument, and the intention of the parties may be ascertained from the terms thereof without explanation, it is the duty of the court to construe it for the jury and instruct them as to the right of the parties thereunder. Parol evidence is not admissible to show the construction placed thereon by the parties themselves, when their intent may be ascertained from the contract as reduced to writing by them."

For other authorities holding in line with last quotation, we refer to the following: Loan Association v. Hamm (Tex. Civ. App.) 36 S. W. 313; Moore v. Mfg. Co. (Tex. Civ. App.) 136 S. W. 570; Lanes v. Squyres, 45 Tex. 383; Belcher v. Mulhall, 57 Tex. 17; Adams v. Hicks, 41 Tex. 240.

[5] All previous negotiations leading up to the execution of a written contract are merged into the contract, and where the latter is free from ambiguity, parol evidence of such prior negotiations is not admissible. Harper v. Lott Town & Improvement Co. (Tex. Com. App.) 228 S. W. 188, and numerous authorities therein cited and reviewed.

The admission of this testimony requires a reversal of this case, in our opinion. The Court of Civil Appeals has cited no authority sustaining its conclusion that these pleadings were sufficient to set up mutual mistake. Had the pleadings sufficiently set up this issue, evidence in support thereof would have been admissible. Furthermore, upon proper request, the issue as to whether there was mutual mistake in the execution of the con-

tract should have been submitted to the jury.

We do not think it necessary to pass upon any other question presented. We think that what we have said disposes of all questions which will likely arise upon another trial.

We believe that the case should be remanded for another trial upon all the pleaded issues, which kind of trial was not had before. Believing that the case has not been fully developed, and that the justice of the situation will be better subserved by remanding it for another trial, we do not believe that any final judgment should be rendered by the Supreme Court at this time.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent herewith.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.